IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RICKY L. SPINKS,<br><br>   Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>   Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No. 2:12-cv-00045-CW-SA<br>Magistrate Judge Samuel Alba |

Before the court is an action filed by Ricky L. Spinks, asking the court to reverse and remand the Social Security Administration's partially favorable final agency decision. The court has carefully considered the parties' memoranda and the complete record in this matter and, based on the analysis set forth below, recommends that the ALJ's decision be REVERSED and REMANDED.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Spinks was born on February 17, 1955. (Doc. 9, the certified copy of the transcript of the entire record of the administrative proceedings relating to Ricky L. Spinks (hereafter "Tr. __") 157.) Mr. Spinks's alleged onset date is July 21, 2008 and his date last insured ("DLI") is September 30, 2010. (Tr. 25.) In March 2009, Mr. Spinks protectively filed applications for Disability Insurance Benefits (hereafter "DIB") and for Supplemental Security Income (hereafter "SSI") under Titles II and XVI of the Social Security Act. (Tr. 25.) *See* 42 U.S.C. §§ 401-433 (2012). Mr. Spinks alleged disability beginning July 21, 2008 and his earnings record shows he acquired sufficient coverage to remain insured through September 30, 2010. (Tr. 25.) These

1

claims were denied initially in June 2009, and denied upon reconsideration in October 2009. (Tr. 25.) Mr. Spinks filed a request for a hearing before an Administrative Law Judge ("ALJ") in November 2009, which was granted. (Tr. 25.) The hearing before the ALJ was held on April 1, 2011.

After the April 2011 hearing, the ALJ concluded that Mr. Spinks "was not disabled prior to February 16, 2010, but became disabled on that date and has continued to be disabled through the date of this decision." (Tr. 25.) Thus, the ALJ concluded that Mr. Spinks was eligible for DIB and SSI, but not as of Mr. Spinks's alleged onset date of July 21, 2008. Rather, the ALJ found that Mr. Spinks had become eligible for DIB and SSI as of February 16, 2010 because that was the date Mr. Spinks's age category changed from "individual closely approaching advanced age" to "individual of advanced age." (Tr. 32.)

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted). It "requires more than a scintilla, but less than a preponderance." *Id.* "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted); *see also O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("Evidence is

insubstantial if it is overwhelmingly contradicted by other evidence."); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) ("A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.") (internal quotation marks and citations omitted).

In conducting its review, the court "must examine the record closely to determine whether substantial evidence supports" the Commissioner's decision. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax,* 489 F.3d at 1084 (internal quotation marks and citations omitted). However, the court is not required to mechanically accept the Commissioner's findings. *See Ehrhart v. Secretary of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992) ("[W]e must do more than merely rubber stamp the decisions of the [Commissioner]."). The court must "examine the record as a whole, including whatever in the record fairly detracts from the weight of the . . . [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). The court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.*

Besides the lack of substantial evidence, reversal may also be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## FIVE-STEP DISABILITY DETERMINATION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. *See* 20 C.F.R. § 404.1520 (2012). "[I]f a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted); *see* 20 C.F.R. § 404.1520(a)(4).

Step one of the evaluation process provides that a claimant who is working is not disabled, regardless of that person's medical condition, age, education and work experience, if it is determined that the work constitutes "substantial gainful activity." *Id.* at § 404.1520(b); *accord Lax*, 489 F.3d at 1084. If the claimant is not engaged in substantial gainful activity, then

4

the decision maker must proceed to step two to determine whether the claimant has an impairment or combination of impairments severe enough to limit his ability to do basic work activities. *See id.* at § 404.1520(c). A determination of this issue is based on medical factors alone. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

A finding of a severe impairment leads the decision maker to step three to determine whether the claimant's impairment meets the durational requirement and is listed in Appendix 1 of Subpart P, 20 C.F.R. § 404, or is equal to a listed impairment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment, or the equivalent thereof, is listed, the claimant is presumed to be disabled. *See id.* at § 404.1520(d). If the impairment is not listed, the decision maker proceeds to step four.

Before considering step four, the decision maker must first determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e) and 416.920(e). The RFC is the ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. § 404.1545(a). In making this finding, the decision maker considers all of the claimant's medically determinable impairments, including those which are not "severe." *See* 20 C.F.R. § 404.1545(b).

At step four, the decision maker uses the RFC to determine if the claimant has the ability to perform his past relevant work. *See id.* at §§ 404.1520(e),(f). If the claimant is able to perform work he has done in the past, he is not disabled. *Id*.

If the claimant is not able to perform past relevant work, the final step is to use the RFC to determine if the claimant has the ability to perform any work available in significant numbers in the national economy. *See* C.F.R. §§ 404.1520(g) and 416.920(g). At this step, where the claimant's impairment is so severe that it precludes him from performing work he has done in

the past, he is deemed disabled unless the Commissioner can establish that "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Williams*, 844 F.2d at 751 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(g).

## ANALYSIS

In this case, the ALJ applied the five-step sequential evaluation, and made the following findings of fact and conclusions of law with respect to Mr. Spinks:

1. "[Mr. Spinks] has not engaged in substantial gainful activity since the alleged onset date." (Tr. 27.)
2. "Since the alleged onset date of disability, July 21, 2008, the claimant has had the following severe impairments: degenerative joint disease of the knees, status-post total left-knee arthroplasty; diabetes mellitus with neuropathy; degenerative disc disease of the lumbar spine." (Tr. 27.)
3. "Since the alleged onset date of disability, July 21, 2008, [Mr. Spinks] has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 30.) Further, "since July 21, 2008, [Mr. Spinks] has the [RFC] to perform light work as defined in 20 CFR 4.401567(b) and 416.967(b) except with standing/walking limited to two hours per eight-hour workday and no climbing of ladders, ropes or scaffolds and needing to avoid concentrated exposure to vibration and unprotected heights." (Tr. 30.)
4. "[Mr. Spinks's] current [RFC] is inconsistent with [his] past relevant work." (Tr. 32.) That is, Mr. Spinks's past relevant work activity, "which was mostly heavy and medium," required more exertion than Mr. Spinks's RFC indicated he was capable of performing. (Tr. 32.)
5. Finally, "Prior to February 16, 2010, the date [Mr. Spinks's] age category changed, considering [Mr. Spinks's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Mr. Spinks] could have performed." (Tr. 32.)

Simply put, the ALJ found that Mr. Spinks was not engaged in substantial gainful activity as of his alleged onset date because he had several "severe" impairments. The ALJ determined that despite those impairments, he had the RFC to complete "light work" until February 16, 2010.

After February 16, 2010, however, Mr. Spinks's age category changed, and, "considering [Mr. Spinks's] age, education, work experience, and [RFC]," the ALJ concluded "there [were] *no* jobs that exist[ed] in significant numbers in the national economy that [Mr. Spinks] could perform. (Tr. 33 (emphasis added).) As a result, the ALJ ruled that Mr. Spinks became totally disabled as of February 16, 2010. (Tr. 34.)

### Evaluation of Medical Opinion Evidence

Mr. Spinks argues that the ALJ did not properly evaluate the medical opinion evidence because he did not "clearly state what weight was being given to any of the opinions in the record and why this weight was being given." (Plaintiff's Opening Brief, at 6.) Mr. Spinks argues that "the issue in the instant case is the failure to clearly state what weight, if any, was given to the opinions, not whether the ALJ adequately articulated his reasons for assigning the weight." (Doc. 17, Plaintiff's Reply Brief (hereafter "Reply"), at 2.) The Commissioner disagrees, arguing that the ALJ's "decision is more than sufficiently explicit as to the weight given to the opinions at issue, and provided reasonable and valid explanations for the weight assigned." (Defendant's Response Brief, at 18.)

In evaluating the opinion of a claimant's treating physician, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The first step is to determine if the physician's opinion is to be given "controlling weight." *Id.* This step requires the ALJ to make a clear finding as to whether he is giving a physician's opinion controlling weight or not. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The second step, if the ALJ determines that a physician's opinion is not entitled to controlling weight, requires the ALJ to state how much weight the

7

opinion is being given, using the factors provided in the regulations.[1]  *Krauser*, 638 F.3d at 1330–31.  At the second step, "after considering the pertinent factors, the ALJ must 'give good reasons in [the] notice of determination or decision' for the weight he ultimately assigns the opinion."  *Watkins*, 350 F.3d at 1301 (quoting 20 C.F.R. § 404.1527(d)(2)).  The ALJ's analysis at the second step need only be "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight."  *Id.* at 1300.

The ALJ in this case failed the first step by failing to make a clear finding as to whether he was giving each physician's opinion controlling weight or not.  Although the ALJ recited the opinions of each of the physicians in his decision, (Tr. 27–30), he did not state the weight given to each opinion.  An opinion is given "controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Krauser*, 638 F.3d at 1330.  The "controlling weight" determination is sequential:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

---

[1] The six factors provided in 20 C.F.R. §§ 404.1527 and 416.927 are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

In this case, the ALJ simply recited the contents of the physicians' opinions, then noted, "[e]xcept the requirement [by one of the physicians] to elevate his lower extremities whenever possible, all of the remaining opinions are consistent with a limited range of light exertion as given by Dr. Taggart and affirmed by Dr. Barton." (Tr. 32.) However, this fails to state if each opinion was given controlling weight, or whether only Dr. Taggart's and Dr. Barton's opinions were given controlling weight, or if none of them were given controlling weight. There is no explanation regarding whether the opinions are well-supported by acceptable diagnostic techniques and no discussion (with the exception of stating "all of the remaining opinions are consistent with" Dr. Taggart's and Dr. Barton's conclusions) about whether the opinions are inconsistent with other evidence in the record. (Tr. 27–30). As a result, the court "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion." *Krauser*, 638 F.3d at 1331. Merely reciting a physician's findings is not enough to indicate whether the ALJ gave such findings controlling weight.

## CONCLUSION

Because the ALJ did not follow the correct legal standards in considering the opinion of Mr. Spinks's treating physicians, the court recommends that the ALJ's decision be reversed and remanded for further proceedings. The court does not reach the remaining issues raised by Mr. Spinks, as they may be affected by the ALJ's treatment of this case on remand.

## RECOMMENDATION

Based on the above analysis, IT IS RECOMMENDED that the ALJ's decision be REVERSED and REMANDED. Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are

further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within fourteen days of receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 12th day of June, 2012.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge